IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHANICE JACKSON<br>Parent and next friend of L.E., a minor<br>and L.E. individually<br>1721 T Street SE, Apt. 103<br>Washington, DC 20020 | ) ) ) ) ) ) ) ) | Civ. A. No: |
| **Plaintiff,** | ) ) | |
| v. | ) ) | |
| DISTRICT OF COLUMBIA<br>A Municipal Corporation<br>One Judiciary Square<br>441 Fourth Street, NW<br>Washington, D.C. 20001 | ) ) ) ) ) ) | |
| to serve: | ) ) | |
| MURIEL BOWSER, Mayor<br>District of Columbia<br>441 4th Street, N. W.,   6th Fl<br>Washington, D.C. 20004 | ) ) ) ) ) | |
| KARL A. RACINE<br>Attorney General<br>441 4th Street, N. W.,   6th Fl<br>Washington, D.C. 20004 | ) ) ) ) ) ) ) | |
| **Defendant.** | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT & INJUNCTIVE AND OTHER RELIEF

COMES NOW, the Plaintiffs Shanice Jackson and her minor child L.E., by and through counsel,

James E. Brown & Associates, P.L.L.C., and respectfully unto this Honorable Court state as follows:

1

## INTRODUCTION

1.  This is a claim for injunctive and declaratory relief brought under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. ("IDEA"). The Plaintiff seeks a judgment 1) declaring that the District of Columbia Public Schools ("DCPS") violated the IDEA and denied L.E.. a free appropriate public education ("FAPE"), 2) Ordering the Defendant to amend L.E.'s IEP and provide an appropriate placement, 3) Ordering the Defendant to fund an independent psychological assessment and 4) ordering compensatory education for L.E.

2.  Specifically, Ms. Jackson asserts that L.E. was denied a FAPE the Defendant failed to offer an appropriate IEP on April 11, 2017, January 20, 2018, and June 11, 2018, when it failed to failed to implement her required occupational therapy services, failed to conduct a functional behavioral assessment and develop a behavior intervention plan, and failed to comprehensively evaluate her by conducting a insufficiently comprehensive psychological evaluation. She further asserts that L.E. is entitled to an independent comprehensive psychological evaluation.

## JURISDICTION AND VENUE

3.  This court has jurisdiction pursuant to:

    a.  The Individuals with Disabilities Educational Improvement Act, 20 U.S.C. § § 1400-1461 ("IDEIA"), and pendent jurisdiction pursuant to D.C. Mun. Regs. Title 5 § § 3000.1 – 3701.3 (2003);

    b.  Declaratory Relief is authorized by 28 U.S.C. § § 2201 and 2202.

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

5.  On October 9th and 11th, 2018 the Plaintiffs participated in an administrative hearing of the claims made in this Complaint conducted by the District of Columbia Office of the State Superintendent of Education ("OSSE") Office of Dispute Resolution. In an order dated October 30, 2018 the Hearing

2

Officer found against the Plaintiffs on the issues asserted in this Complaint and denied her the relief requested. *See* Exhibit 2.

## PARTIES

6.  Plaintiff Shanice Jackson is the parent of her minor child, L.E., a student who has been deemed eligible to receive special education and related services from the District of Columbia Public Schools ("DCPS").

7.  Plaintiff L.E. is a minor child who has been deemed eligible to receive special education and related services from DCPS.

8.  Plaintiffs, at all times relevant to this action, have been residents of the District of Columbia.

9.  That Defendant is a municipal corporation that receives federal funds pursuant to the IDEA, *see* 20 U.S.C. § 1411, in exchange for providing a free and appropriate public education ("FAPE"), and is obliged to comply with the applicable federal regulations and statutes, including but not limited, to IDEIA. *See also* § 1412(a)(1)(A).

## FACTUAL BACKGROUND

10. L.E. is a ten (10) year old student who the Defendant has provided an IEP for an Other Health Impairment ("OHI") for Attention Deficit with Hyperactivity Disorder ("ADHD").

11. She resides in the custody of her mother, Ms. Shanice Jackson, in the District of Columbia and attends Tyler Elementary School ("Tyler" or "the school") where she is in fifth grade.

12. The student was initially found eligible for an IEP when she was three-years-old.

13. The evaluation was conducted as parent had concerns related to the student's ability to communicate and her negative behaviors.

14. LE's developmental quotient was a 59 which is in the significantly developmentally delayed range.

3

15. Her IEP for a Developmental Delay provided 26 hours of specialized instruction per week outside the general education setting and provided 120 minutes per month of occupational therapy (OT) and 120 minutes per month of speech and language services.

16. A reevaluation of the student was completed in May 2016 when she was a second grader attending Aiton ES.

17. During the teacher interview, the evaluator was told that LE is "easily distracted during instruction, either constantly looking around or horse-playing with other classmates." Moreover, this off task behavior "requires continuous redirection" and LE "instigates disruption."

18. During the reevaluation the evaluator noted that during testing the student would act "silly" and required redirection to the tasks at hand. There were no observations of the student while she was in class. There also was no socio-emotional testing conducted although the student was said to be constantly off task.

19. The student's cognitive skills were tested using the Wechsler Intelligence Scale for Children – 5th Edition (WISC-V). LE had a Full Scale IQ (FSIQ) of 81 which is Low Average. Her Verbal Comprehension (score of 84), Visual Spatial (score of 81), and Fluid Reasoning (score of 85) were all Low Average. LE's Working Memory was Very Low at 78. She scored in the Average range on her Processing Speed at 103.

20. To measure the student's academic functioning, the evaluator used the Woodcock Johnson Test of Achievement – Fourth Edition (WJ-IV). LE scored Very Low on five measures of the test: Passage Comprehension (score of 63), Applied Problems (score of 66), Sentence Writing Fluency (score of 65), Mathematics (score of 69), and Broad Mathematics (score of 69). For the most part the student

4

performed in the Low range. Areas she performed Low on include Calculation (score of 74),

Reading (score of 74), Academic Skills (score of 77), and Broad Achievement (score of 72).

21. The evaluator noted that LE's scores on the Reading tests indicate that she has reading abilities that

range from far below her age range to being on grade level.

22. In Math, the evaluator reported that the student's scores in Math are indicative that her math skills

are significantly below age and grade level standards.

23. Like her Reading skills, the evaluator found that her scores relating to Written Language are varied

and fall either significantly below her same-aged peers or at grade level expectations.

24. Based on the cognitive and achievement testing done in the evaluation, the evaluator recommended

that the student be classified as having a Specific Learning Disability (SLD). There was no socio-

emotional testing conducted.

25. A Speech and Language evaluation was also conducted in May 2016. It was noted that on LE's last

speech and language evaluation she fell in the delayed range and speech and language services were

recommended for her. On the Peabody Picture Vocabulary Test-4 (PPVT-4), LE scored in the below

average range indicating that she had some difficulty with identifying different actions/pictures, and

thus had a concern regarding her receptive vocabulary. On the Clinical Evaluation of Language

Fundamentals-5 (CELF-5) the student performed below average on two subtests: Word Structure

and Linguistic Concepts.

26. In May 2016, the student's IEP team met and determined her eligible as a student with OHI. At this

time she was exited from speech and language services, although occupational therapy services were

continued on her IEP.

27. For the 2016-2017 school-year L.E. began attending Tyler Elementary.

28. On April 11, 2017, the student's IEP was updated during her Annual Review. The classification the

team chose was OHI for ADHD. The IEP notes in the area regarding Communication concerns that

LE needs to increase her ability to verbally participate in a variety of activities. It also says that she

needs to improve her use of pronouns. Finally, it was noted that LE would benefit from assistance

remaining focused and attentive.

29. The April 11, 2017 IEP provided goals in Reading, Mathematics, and Writing. LE was given 26

hours of specialized instruction outside the general education setting. In the Math section it is noted

that LE can be easily distracted during instruction. The Reading section points out that the student

struggles with receptive and expressive language; however, there are no speech and language goals.

30. The Reading section also addresses the student's lack of focus: "She is easily distracted and can be

impulsive (e.g. touching others desk and work, crumpling papers, touching others, takes and hides

things)."

31. The Occupational Therapy section of the IEP also speaks to the student's behaviors. It points out that

she consistently struggles to maintain her attention. Moreover, she involves herself in her peers'

personal space, in discussion with classmates during instruction, and gets involved in situations

effecting other students. In spite of all the mentions of her inappropriate behaviors during school, the

IEP did not provide LE any Behavioral Support Services (BSS).

32. The student's iReady scores for June 1, 2017, indicated that the student was doing Math on a first-

grade level. She performed particularly low in Measurement and Data (Level 1) and Geometry

(Level K).

33. On August 29, 2017, an IEP meeting was held. The student's mother, advocate, and attorney

attended the meeting. Counsel for Ms. Ellis requested that the school conduct an adaptive

6

assessment, a neuropsychological, and an Assistive Technology evaluation and requested independent educational evaluations for speech and language, OT, and psychological testing. DCPS agreed that it would conduct the speech/language, OT, and psychological evaluations. DCPS also agreed to conduct an functional behavior assessment.

34. In September of 2017 an OT assessment was performed on the student with a report date of October 10, 2017. There were several concerning things that were reported about LE's behaviors. The July 2017 ESY progress report said that LE had been observed placing items in her mouth and rubbing them on her face so this evaluation addressed LE's sensory processing. LE's teacher Mr. Edwards was interviewed and reported that the student was easily distracted and has decreased comprehension when reading.

35. In September 2017 DCPS completed a psychological reevaluation of LE. While the reevaluation was not comprehensive, it did reveal a severe drop in the student's FSIQ from the previous year. The same measure of intelligence was used as during the previous year, the WISC-5. The student's Verbal Comprehension Index was at a 73 which is Very Low. Overall her FSIQ was Extremely Low at 69. The evaluation did not discuss the rapid drop in FSIQ although she reviewed the previous psychological evaluation.

36. The subtests of the WISC-5 are also revealing. The student's Vocabulary score was in the bottom 2%. The evaluator noted that "In the classroom setting, [LE] may experience difficulties with defining words, understanding the meaning of words based on contextual cues and have a poor fund of language." In spite of this weakness with language, DCPS has continued to deny Petitioner's request for a speech and language evaluation.

37. The 10/16/17 reevaluation revealed that in the classroom LE struggles academically and behaviorally. According to the teacher interview with Mr. Edwards, the student had difficulty with comprehension in Reading. Mathematically she had trouble with subtraction, regrouping, and multi-integer equations. She exhibited impulsive and distracted behaviors. Mr. Edwards said that LE violated others personal space and was extremely talkative, off-task, and impulsive one day and a model student the next, although her work was not always correct on assignments.

38. The evaluator said that LE's inability to self-regulate impacted her in all academic areas. In class the student is often off task, talkative, and easily distracted. In fact, LE needs "constant redirection to maintain focus."

39. The Gilliam Autism Rating Scale- Third Edition was used to address suspicions that LE may have autism. Both the teacher and parent scaled scores were very close to the Possibly range. The Possibly range is from 55-70 and the Unlikely range is 54 or less. Parent rated LE a 54 and teacher rated her a 53.

40. At hearing, a witness for Ms. Jackson, Dr. Robert Wingfield testified that for individuals like LE, the GARS was a weak tool which may not show a condition when it does in fact exist.

41. The DCPS evaluator used the Adaptive Behavior Assessment System Third Edition to measure the student's adaptive skills in three areas: Conceptual, Social, and Practical. Mr. Edwards and parent completed the assessment. While LE's scores averaged out to be in the Average range, in the Conceptual range by itself LE was rated by her teacher to be in the Low range and by her mother to be in the Below Average range.

42. For the second term, LE's IEP Progress Report indicates that while she was progressing in her academic goals, she was still struggling to define vocabulary words and in fact needed assistance in defining or comprehending new vocabulary words.

43. On January 11, 2018 the MDT met again to discuss LE's needs. Parent's main concern was that LE gets very frustrated and calls herself stupid. Teachers at the meeting indicated that LE is easily distracted, impulsive, and talkative.

44. A new IEP was created on January 30, 2018. As in her previous IEP, there was a statement that the student's Communication needs should be considered. It said that the school would try to increase LE's ability to participate verbally in structured language activities and encourage her conversations with peers. It also said the student would benefit from cues to focus. Again, in the Reading concerns section it was noted that LE struggles with receptive and expressive language.

45. A new area of concern was also added: Emotional, Social, and Behavioral Development. It says under that area of concern that LE's impulsivity and hyperactivity significantly impact her academic progress. It was also noted that her inability to inhibit her actions and to self-regulate impacts her across all subjects. Finally, it notes that while she is easily redirected, constant redirection is necessary for LE to maintain focus. At that time, her specialized instruction time and OT time remained the same and 30 minutes of BSS consultation was added to the IEP.

46. An IEP meeting was held on June 11, 2018.

47. At this time, the team added behavior support services, but otherwise made little substantive change to L.E.'s IEP, despite her continuing failure to make appropriate academic progress and escalating behavior problems.

48. On July 24, 2018, Ms. Jackson filed the underlying due process complaint, alleging that the Defendant denied L.E. a FAPE when it failed to offer an appropriate IEP on April 11, 2017, January 20, 2018, and June 11, 2018, when it failed to failed to implement her required occupational therapy services, failed to conduct a functional behavioral assessment and develop a behavior intervention plan, and failed to comprehensively evaluate her by conducting a insufficiently comprehensive psychological evaluation and failing to evaluate her in the area of speech and language

49. On July 25, 2018, the Defendant filed a due process complaint against Ms. Jackson, defending its psychological evaluation in response to Ms. Jackson's request for an independent educational evaluation.

50. On October 9 and 11, 2018, the parties appeared before a Hearing Officer to hear the issues in these two complaints.

51. At this Hearing, Ms. Jackson presented testimony from expert witnesses that the IEPs in question were inappropriate, that her behavior issues necessitated a functional behavioral assessment and a behavior intervention plan, and that the conducted psychological evaluation was inadequate.

52. Despite this evidence, on October 30, 2018, the Hearing Officer issued an order finding against Ms. Jackson in all respects except her claim that the Defendant denied L.E. a FAPE by failing to conduct a speech and language evaluation.

53. Following completion of the speech and language evaluation conducted by pursuant to the October 30, 2018 HOD, it was recommended that L.E. receive speech and language services.

54. In this complaint, Ms. Jackson challenges errors in the Hearing Officer's determination and requests that the Court find in her favor on the issues asserted.

**COUNT I**
**(Failure to Provide An Appropriate IEP on April 11, 2017)**

10

55. Plaintiffs reincorporate paragraphs 1-54.

56. On April 11, 2017 the Defendant developed an IEP for L.E. Despite extensive discussion within the IEP of her deficits in language and communication, it provided no speech and language services for her.

57. The necessity of these services was testified to by Courtney Lhota, Ms. Jackson's speech and language expert, and confirmed by speech and language testing ordered by the Hearing Officer's Determination.

58. Despite this, the Hearing Officer did not substantively discuss the evidence that L.E. needed speech and language services

59. In addition, the Hearing Officer did not address evidence that L.E. required adaptive goals.

60. Despite evidence that L.E. was experiencing behavior that interfered with her education and that she had trouble staying focused, the Hearing Officer found that she did not require behavior support services.

61. Finally, despite evidence that L.E. was not progressing in the placement offered by the Defendant, the Hearing Officer found that it had not failed to offer an appropriate placement.

## COUNT II
### (Failure to Provide An Appropriate IEP on January 30, 2018)

62. Plaintiffs reincorporate paragraphs 1-61.

63. On January 30, 2018, the Defendant revised L.E.'s IEP.

64. Despite further evidence that she required speech and language services, including a second percentile score in vocabulary and a Very Low score in verbal comprehension, it still failed to provide her with speech and language services.

11

65. At this time, the Defendant also possessed information that L.E.'s IQ had fallen by twelve points; despite this, it did not provide her with adaptive goals.

66. Again, the Defendant failed to provide behavior support services to L.E. despite a history of issues with behavior and attention.

67. Finally, this IEP again maintained L.E. in a placement in which she was not making progress.

68. In considering this evidence, the Hearing Officer failed to discuss the new information available to the IEP team in January 2018, and simply repeated his flawed analysis of the prior IEP.

## COUNT III
### (Failure to Provide An Appropriate IEP on June 11, 2018)

69. Plaintiffs reincorporate paragraphs 1-68.

70. On June 11, 2018, the Defendant revised L.E.'s IEP.

71. At this time, L.E.'s behaviors were escalating and her academic performance remained poor; despite this, it continued her in an identical placement.

72. At this time, it did add some behavior support services, but they were inadequate based on the expert testimony of L.E.'s educational advocate; the hearing officer does not address this testimony.

73. In addition, Dr. Wingfield, who treats L.E., said she required a dedicated aide, but the Hearing Officer did not address this testimony.

74. Again, the Hearing Officer repeated his flawed analysis of the April 11, 2017 IEP and did not take in account new evidence that was relevant at this time.

## COUNT IV
### (Failure to Conduct a Necessary Functional Behavior Assessment and/or Implement an Appropriate Behavior Intervention Plan)

75. Plaintiffs reincorporate paragraphs 1-74.

76. Throughout the period under consideration, L.E. displayed behaviors that prevented her from accessing her education.

77. Despite this, the Defendant did not conduct a functional behavior assessment of L.E. or develop an individualized behavior intervention plan for her.

78. Despite the evidence, the Hearing Officer found that L.E. did not require a functional behavior assessment or behavior intervention plan.

79. This finding is in error and should be set aside.

## COUNT V
### (Failure to Fund a Necessary Independent Psychological Evaluation of L.E.)

80. Plaintiffs reincorporate paragraphs 1-79.

81. At Hearing, Ms. Jackson presented evidence that the Defendant failed to adequately evaluate L.E. in that the evaluation in that the evaluation did not investigate her dramatic drop in full scale IQ, failed to adequately test her for autism, did not include achievement testing, and did not assess her social emotional and behavioral functioning.

82. Instead of evaluating these errors in light of the statutory standard, the Hearing Officer focused his analysis on the "purpose" of the evaluation.

83. Further, the Hearing Officer determined the evaluation appropriate, in part, based on the claim that L.E.'s teacher conducted achievement testing, despite having stated on the record at hearing that that would not be a reason to find the testing appropriate.

84. These conclusions were contrary to the offered evidence and in error.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that this Court:

1) Reverse the October 30, 2018, HOD and find that L.E. was denied FAPE on each of the alleged issues.

2) Order the Defendant to amend L.E.'s IEP as necessary, including to provide placement in a therapeutic program where all services are provided outside of general education, adaptive goals, speech and language services and goals, and increased behavior support services

3) Order the Defendant to fund an independent comprehensive psychological evaluation and conduct a functional behavior assessment and develop a behavior intervention plan;

4) Order the Defendant to provide compensatory education for this denial of FAPE.

5) In the alternative, remand the case to the Hearing Officer for consideration of the appropriate compensatory education.

6) Award the Plaintiff attorneys' fees and costs for this action;

7) Award any other relief the Court deems appropriate.

**Respectfully submitted,**

ROBERT W. JONES, Bar No. DC997776
Associate Attorney
James E. Brown & Associates, PLLC
1220 L Street, 7th Floor
Washington, D.C. 20005
(202) 742-2000 (voice)
(202) 742-2098 (fax)
**Attorneys for Plaintiffs**